IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

CLIFTON SMITH,

   Plaintiff,

vs.        No. 07-2536-STA-tmp

KIM GAYLE, et al.,

   Defendants.

ORDER CORRECTING THE DOCKET
ORDER DENYING MOTION FOR AN EXTENSION OF TIME
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
ORDER OF DISMISSAL
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
NOTICE OF APPELLATE FILING FEE

On August 10, 2007, Plaintiff Clifton Smith, RNI number 75170, an inmate at the Shelby County Correctional Center in Memphis, Tennessee, filed a pro se complaint pursuant to 42 U.S.C. § 1983 against, inter alia, Kim Gayle (who is identified in the complaint as "Kim Gale"),[1] Tim Green, Renondia Levy Hite, and Shelby County. (Docket Entry ("D.E.") 1.) United States District Judge J. Daniel Breen issued an order on November 26, 2007 that, inter alia, directed the Clerk to issue process for, and the

---

[1] The Clerk is directed to correct the docket to reflect the correct spelling of this defendant's name, which is taken from her factual affidavit submitted in support of her summary judgment motion.

marshal to effect service on, the defendants. (D.E. 3.) On January 28, 2008, Defendants filed a motion to dismiss or, in the alternative, for summary judgment. (D.E. 13.) The case was reassigned to this judge on May 21, 2008. (D.E. 24.)

Because Plaintiff did not respond to the motion, the Court issued an order on July 11, 2008 directing him to show cause, within eleven (11) days, why Defendants' motion should not be granted. (D.E. 41.) It is not clear whether Plaintiff responded to the show cause order. On July 17, 2008, Plaintiff filed two documents, the first of which, entitled "Completing Motion to All Discovery" (D.E. 43), was docketed as a discovery motion but is, actually, an unsworn recitation of Plaintiff's version of the relevant facts. That document may have been intended to respond to the summary judgment motion and show cause order. The second document filed on July 17, 2008, entitled "Motion for an Extend" (D.E. 44), asks for an "Extend" to enable Plaintiff to "finish [his] Legal Work," but does not mention Defendants' motion for summary judgment. Assuming this motion can be construed as a request for an extension of time to respond to the summary judgment motion, it is deficient because the motion does not state that the extension of time is necessary to respond to the summary judgment motion and does not state when a response to the summary judgment motion can be completed. Defendants' summary judgment motion had been pending for more than five months when Plaintiff's request for

an extension of time was filed, and Plaintiff has not explained why he did not previously respond to the motion or why additional time is necessary. The motion for an extension of time is DENIED.

Summary judgment is appropriate "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As the Supreme Court has explained:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citation omitted).

Under Fed. R. Civ. P. 56(e)(2), "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." In considering a motion for summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." Kochins v.

3

Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

587-88 (1986) (same).[2]

A genuine issue of material fact exists "if the evidence

[presented by the non-moving party] is such that a reasonable jury

could return a verdict for the non-moving party." Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also id. at 252

("The mere existence of a scintilla of evidence in support of the

plaintiff's position will be insufficient; there must be evidence

on which the jury could reasonably find for the plaintiff. The

judge's inquiry, therefore, unavoidably asks whether reasonable

jurors could find by a preponderance of the evidence that the

plaintiff is entitled to a verdict[.]"); Matsushita, 475 U.S. at

586 ("When the moving party has carried its burden under Rule

56(c), its opponent must do more than simply show that there is

some metaphysical doubt as to the material facts.") (footnote

omitted). The Court's function is not to weigh the evidence, judge

credibility, or in any way determine the truth of the matter,

however. Liberty Lobby, 477 U.S. at 249. Rather, the inquiry is

---

[2]     Rule 56(e)(1) sets forth in detail the evidentiary requirements
applicable to a summary judgment motion:

    A supporting or opposing affidavit must be made on personal
    knowledge, set out facts that would be admissible in evidence, and
    show that the affiant is competent to testify on the matters stated.
    If a paper or part of a paper is referred to in an affidavit, a
    sworn or certified copy must be attached to or served with the
    affidavit. The court may permit an affidavit to be supplemented or
    opposed by depositions, answers to interrogatories, or additional
    affidavits.

"whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law." Id. at 251-52.

Moreover, Fed. R. Civ. P. 56(f) provides as follows:

> If a party when opposing the motion shows by
> affidavit that, for specified reasons, it cannot present
> facts essential to justify its opposition, the court may:
>
> (1) deny the motion;
>
> (2) order a continuance to enable affidavits to be
> obtained, depositions to be taken, or other
> discovery to be undertaken; or
>
> (3) issue any other just order.

"Beyond the procedural requirement of filing an affidavit, Rule

56(f) has been interpreted as requiring that a party making such a

filing indicate to the district court its need for discovery, what

material facts it hopes to uncover, and why it has not previously

discovered the information." Cacevic v. City of Hazel Park, 226

F.3d 483, 488 (6th Cir. 2000); see also Good v. Ohio Edison Co.,

149 F.3d 413, 422 (6th Cir. 1998); Plott v. General Motors Corp.,

71 F.3d 1190, 1196-97 (6th Cir. 1995). Moreover, the Sixth Circuit

has held that, unless the nonmoving party files a Rule 56(f)

affidavit, a district court cannot decline to consider the merits

of a summary judgment motion on the ground that it is premature.

Wallin v. Norman, 317 F.3d 558, 564 (6th Cir. 2003).

Plaintiff's July 17, 2008 filing (D.E. 43) does not

explicitly seek additional discovery, despite the misleading title

of the document, is not an affidavit, and does not satisfy the requirements of Rule 56(f). The Court will, therefore, address the summary judgment motion on the merits.

The Court's task in evaluating this motion for summary judgment is complicated by Plaintiff's failure to submit any admissible evidence in response. In his original complaint, which was sworn to under penalty of perjury and is the functional equivalent of an affidavit, <u>Smith v. Campbell</u>, 250 F.3d 1032, 1036 (6th Cir. 2001); <u>Weberg v. Franks</u>, 229 F.3d 514, 526 n.14 (6th Cir. 2000), Plaintiff alleged as follows:

> On April 24, 2007 around 7:00 A:M [sic] Tuesday morning inmate Marcus Green #291926 and I, Clifton Smith #75170 was involved in a incident. We was in the T.V. Room, i [sic] was sitting in a chair reading the Bible. Mr. Green sat down next to me, and begin to masturbate. I asked him to move away from me. He stated to me; Fuck-you this is my penis and spit in my face. When i [sic] stood up to leave, he jumped-up and hit me in the face.
>
> When i began to try to protect myself, from Marcus Green #<u>291926</u>, inmate Michale [sic] Arnold #<u>186462</u> grabbed me around my neck, pushed me over a table and i flipped over a chair, and hit the floor. When i was lying on the floor, inmate Michale Arnold #<u>186462</u> grabbed my arm, and started twisting it. At this time Counselor Tim Green entered into the room, and took me into his office. He then asked me to place my hands behind my back, to hand-cuff me. But, i stated to him, i couldn't placed my hands behind my back, because my shoulder was hurting.
>
> The counselor escorted me to medical, with-out hand-cuffs. Once we entered into the medical-ward, counselor Green called Sgt. Linda Price. She took pictures of my left shoulder, and my neck. Afterward, Counselor Green asked Sgt. Price how did she want the incident wrote-up.
>
> She told him to have inmate Marcus Green #<u>291926</u> and Michale Arnold #<u>186462</u> written-up for assault. After that

6

the nurse exaimed [sic] my shoulder and neck. She stated that my shoulder seemed to be dis-located, and had me sent to the outside hospital. At the MED. When i arrived at the Med x-rays was taken. It was determined by the doctor's that my should was dis-located. I was given pain medicine and the doctor told me, i would need THERAPY.

When i returned from the hospital, i was escorted to solitary confindment [sic]. I was written-up for fighting. Also inmate Marcus Green #291926 was charged with fighting, and was in solitary-confindment [sic]. Although i never throwed [sic] a punch at niether [sic] inmate. Also i clearly heard Sgt. Price, tell Counselor green [sic], to write both inmates Marcus Green #291926 and Michale Arnold #186462 up for assault. Counselors Kim Gale, Renondia Hite, nor Tim Green, tried to stop those inmates from attacking me.

(D.E. 1 at 3-4.) Plaintiff seeks an award of money damages. (Id. at 3.)

In support of their summary judgment motion, Defendants have submitted the affidavit of Defendant Gayles, which states in pertinent part as follows:

2.   That I am employed by Shelby County Government as a Care & Custody Counselor (B) at the Shelby County Division of Corrections (hereinafter SCDC) and have been so employed since February 1, 1995 when I was originally hired as a Correctional Officer.

3.   That on April 24, 2007 I was assigned to G-Building during the 0600 - 1400 shift at the SCDC and carried out duties as Charge Counselor while on the A/B wing of G-Building.

4.   That as Charge Counselor, I had to make sure the Unit's daily scheduled activities run smoothly and were logged throughout the day in addition to conducting isolation checks and answering the telephones.

5.   That G-Building is a 24-hour supervised mental health treatment unit housing majority medium security inmates under close observation and has minimal instances of inmate-on-inmate violence. At times the unit serves as

a "safe-haven" for inmates deemed vulnerable in general population.

6.    That other duties of the Charge Counselor were to carry the security keys for the building entrance door as well as answering the radio.

7.    That as the only staff member assigned to the A/B control post on that day, I could not leave the control booth vacant at any time unless I was relieved by another staff member.

8.    That Supervisor/Counselor Renondia Levy-Hite and Supervisor/Counselor Tim Green were the supervising Care & Custody Counselors (A's) on duty in G-Building carrying out various supervisory as well as care & custody duties while assisting on the G-Building units during the 0600 - 1400 hour shift.

9.    That at the start of the shift shortly after 0645 hours Supervisor Hite came on the A/B wing to assist me in preparing the inmates to start the day.

10.    That at approximately 0710 hours during the time the inmates on A/B wing were standing around waiting to go to chow (breakfast), one of the inmate clients knocked on the control booth window from where Supervisor Hite and I were located, saying "they are fighting, Smith just up and hit (inmate) Green."

11.    That as the Charge Counselor, I had to record the incident in the wing log book and could not leave the control booth with the building security keys in my possession for security purposes.

12.    That I immediately opened the door to A-dorm while Supervisor Hite stepped out of the control into A-dorm while I stepped to the door way monitoring the situation from the control booth until assistance arrived.

13.    That upon entering the dorm, Counselor Hite yelled for the two inmate (Clifton Smith #75170) and Marcus Green #291926) to stop fighting when Supervisor Green (who had been monitoring the C/D wing of G-building) quickly entered the A-dorm from the outside dorm door.

14. That I immediately called for assistance on the radio while Supervisor Green gave verbal directives to Inmates Green and Smith to stop fighting.

15. That I observed I/M Marcus Green attempting to refrain from fighting, but I/M Clifton Smith refused Supervisor Green's directives and I/M continued to advance towards I/M Green.

16. That suddenly without Supervisor Green's or any other Counselor's advance knowledge or consent, an inmate outside A-dorm (I/M Michael Arnold #186462) stepped up and intervened to help pull I/M Smith away from I/M Green.

17. That Counselor Green was then able to get I/M Smith over to the dorm door and lead him off the unit so that the two inmates could be separated and later escorted to the medical unit in the main building.

18. That no staff member on the unit on April 24, 2007 or at any other time had any prior notice or knowledge of any complaint from I/M Clifton Smith regarding any problem or disagreement with I/M Marcus Green or any other inmate in G-Building nor had inmate Green given any indication of a propensity for violence as we had never had a prior problem from inmate Green in any form.

19. That the incident that occurred between the two inmates was totally spontaneous and unexpected.

(Affidavit of Kim Gayles, sworn to on Jan. 28, 2008 ("Gayles Aff."), ¶¶ 2-19 (D.E. 13-4).)

The Eighth Amendment prohibits cruel and unusual punishment. <u>See generally</u> <u>Wilson v. Seiter</u>, 501 U.S. 294 (1991). An Eighth Amendment claim consists of both objective and subjective components. <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994); <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992); <u>Wilson</u>, 501 U.S. at 298; <u>Brooks v. Celeste</u>, 39 F.3d 125, 127-28 (6th Cir. 1994); <u>Hunt v. Reynolds</u>, 974

F.2d 734, 735 (6th Cir. 1992). The objective component requires that the deprivation be "sufficiently serious." <u>Farmer</u>, 511 U.S. at 834; <u>Hudson</u>, 503 U.S. at 8; <u>Wilson</u>, 501 U.S. at 298. The subjective component requires that the official act with the requisite intent, that is, that he have a "sufficiently culpable state of mind." <u>Farmer</u>, 511 U.S. at 834; <u>Wilson</u>, 501 U.S. at 297, 302-03.

"'[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'" <u>Leary v. Livingston County</u>, 528 F.3d 438, 442 (6th Cir. 2008) (quoting <u>Farmer</u>, 511 U.S. at 833); <u>see also Dellis v. Corrections Corp. of Am.</u>, 257 F.3d 508, 512 (6th Cir. 2001). To establish liability under the Eighth Amendment for a claim based on failure to prevent harm to a prisoner, a plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. <u>Farmer</u>, 511 U.S. at 834; <u>Helling v. McKinney</u>, 509 U.S. 25, 32 (1993); <u>Woods v. Lecureux</u>, 110 F.3d 1215, 1222 (6th Cir. 1997); <u>Street v. Corrections Corp. of Am.</u>, 102 F.3d 810, 814 (6th Cir. 1996); <u>Taylor v. Michigan Dep't of Corrections</u>, 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." <u>Farmer</u>, 511 U.S. at 835. Thus,

> [a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of

serious harm exists, and he must also draw the inference. This approach comports best with the text of the Eighth Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38 (emphasis added; citations omitted); see also Garretson v. City of Madison Heights, 407 F.3d 789, 796 (6th Cir. 2005) ("If the officers failed to act in the face of an obvious risk of which they should have known but did not, then they did not violate the Fourteenth Amendment."). To show that a corrections officer was deliberately indifferent to the risk that an inmate would be assaulted by another inmate, there must be a showing that the assault was "reasonably preventable." Dellis, 257 F.3d at 512 (citing Babcock v. White, 102 F.3d 267, 272 (7th Cir. 1996)).

In this case, Plaintiff has not come forward with sufficient evidence to raise a triable issue of fact as to whether Defendants Gayle, Green, and Hite were deliberately indifferent to the risk that Inmate Green would assault Plaintiff or that Inmate Arnold would intervene to break up the fight. It is undisputed that, before the assault, Defendants Gayle, Green, and Hite had no information that Inmate Green posed any particular risk to

Plaintiff or to any other inmate. (Gayle Aff., ¶ 18; see also id., ¶ 19.) Instead, Defendant Gayle states that SCDC staff had not been "given any indication [that Inmate Green had] a propensity for violence as we had never had a prior problem from inmate Green in any form." (Id., ¶ 18.) SCDC staff also had no prior knowledge of a problem between Plaintiff and Inmate Arnold. (Id.)

Although "warnings from the prisoner himself are not required when other evidence discloses a substantial risk of serious harm," Woods, 110 F.3d at 1224, Plaintiff has not come forward with other evidence that he was vulnerable to physical assault or that Defendants Gayle, Green, and Hite (or any other SCDC employee) were aware of, and disregarded, pervasive violence at the SCDC, Hester v. Morgan, 52 F. App'x 220, 223 (6th Cir. 2002); Woods, 110 F.3d at 1225 ("Although Jabe does not deny that SPSM housed violent prisoners and that violence among the prison population would sometimes occur, this fact does not establish an Eighth Amendment violation."). "There is no evidence that the risk of inmate attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past.'" Hester, 52 F. App'x at 223 (quoting Street, 102 F.3d at 105). There is no evidence in the record of any previous inmate on inmate assaults at the SCDC.

Even if Defendants Gayle, Green, and Hite lacked prior knowledge of a threat posed by Inmates Green and Arnold, they can

12

be held liable for failing to respond appropriately once the fight broke out. Plaintiff and Defendants have provided somewhat different accounts of the events at issue. In his verified complaint, Plaintiff contends that Inmate Green attacked him after Plaintiff objected to him masturbating in public. He casts Inmate Green as the aggressor, stating that his actions during the altercation were attempts "to try to protect" himself from Green and that Inmate Arnold intervened to assist Inmate Green's assault on Plaintiff. See supra p. 6. Defendant Gayles apparently did not observe the interaction between Plaintiff and Inmate Green prior to the fight, and she offers no opinion as to its cause or who struck the first blow. She reports that the inmate who alerted her to the fight said that "'they are fighting, Smith just up and hit (inmate} Green,'" Gayle Aff., ¶ 10, and she also reports that she "observed I/M Marcus Green attempting to refrain from fighting, but I/M Clifton Smith refused Supervisor Green's directives and I/M continued to advance towards I/M Green," id., ¶ 15. Thus, although Defendants have not disputed Plaintiff's version of the events leading up to the altercation, the parties differ about whether, at some point, Plaintiff continued to fight after Inmate Green had attempted to withdraw from the altercation.

Although Plaintiff asserts, without elaboration, that "Counselors Kim Gale [sic], Renondia Hite, nor Tim Green, tried to stop those inmates from attacking me" (D.E. 1 at 4), he does not

specify how the actions, or inaction, of any Defendant, in response to the fight, caused his injuries. Defendant Gayle states that, when she was alerted to the fight, she "immediately opened the door to A-dorm" to permit Defendant Hite to enter the dorm, Gayle Aff., ¶ 12, while she remained in the control booth and "immediately called for assistance on the radio," id., ¶ 11, 14. Defendant Hite ordered the two inmates to stop fighting, id., ¶ 13, and Defendant Green "quickly entered the A-dorm from the outside dorm door," id., and "gave verbal directives to Inmates Green and Smith to stop fighting, id., ¶ 14. According to Plaintiff's version of events, Inmate Arnold had intervened to assist Inmate Green before Defendant Green entered the dorm and, once Defendant Green arrived, he "took [Plaintiff] into his office." See supra p. 6. Defendant Gayle states that Inmate Arnold intervened after Defendant Green ordered to combatants to stop fighting and Plaintiff did not comply. Gayle Aff., ¶¶ 15-16. According to Defendant Gayle, the intervention of Inmate Arnold occurred "suddenly without Supervisor Green's or any other Counselor's advance knowledge or consent." Id., ¶ 16. It is unnecessary to resolve this factual dispute because, regardless of which version is accepted, Plaintiff has not come forward with evidence sufficient to raise a triable issue of fact as to whether Defendants Gayle, Green, and Hite were deliberately indifferent to the risk posed to his health or safety by Inmates Green or Arnold.

For all the foregoing reasons, the Court GRANTS the motion for summary judgment filed by Defendants Gayle, Green, and Hite on the deliberate indifference claim.

Although not addressed in the motion to dismiss, the complaint can also be construed as asserting a claim against one or more defendants because Plaintiff was given a disciplinary write-up for fighting and sent to solitary confinement despite his assurance that he did not throw a punch. See supra p. 7. The complaint does not disclose the outcome of Plaintiff's disciplinary hearing or the length of time he spent in solitary confinement. This claim is subject to dismissal, sua sponte, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

The assignment of prisoners to administrative or disciplinary segregation does not infringe on a liberty interest:

> Conner asserts, incorrectly, that any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation. . . .
>
> . . . .
>
> . . . We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.

Sandin v. Conner, 515 U.S. 472, 484, 486 (1995). Thus, an inmate generally cannot maintain a due process claim based on his confinement in segregation. See Harbin-Bey v. Rutter, 420 F.3d 571, 576-77 (6th Cir. 2005) (designation as member of a security threat

group and permanent restrictions imposed as a result of that designation not an atypical and significant hardship in relation to the ordinary incidents of prison life); Sarmiento v. Hemingway, 93 F. App'x 65, 66 (6th Cir. 2004) ("Generally, unless placement in disciplinary confinement is accompanied by a withdrawal of good time credits or is for a significant period of time that presents an unusual hardship on the inmate, no interest to remain free of disciplinary confinement will be found in the case."); Utley v. Campbell, 84 F. App'x 627, 629 (6th Cir. 2003) ("In order to state a claim of a denial of due process during a disciplinary hearing, Utley was required, and failed, to show that he had been subjected to an atypical and significant hardship."); Williams v. Wilkinson, 51 F. App'x 553, 556-57 (6th Cir. 2002); see also Jones v. Baker, 155 F.3d 810 (6th Cir. 1998) (administrative segregation); Mackey v. Dyke, 111 F.3d 460 (6th Cir. 1997); Bruggeman v. Paxton, No. 00-3917, 2001 WL 861678, at *1 (6th Cir. June 30, 2001). Nothing in the complaint provides any basis for a conclusion that the conditions Plaintiff encountered in punitive segregation "impose[] atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Conner, 515 U.S. at 484; see also id. at 487. This aspect of the complaint is DISMISSED, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim on which relief may be granted. As these are the only claims asserted

against Defendants Gayle, Green, and Hite, the complaint is DISMISSED as to them.

Finally, Shelby County argues that the complaint against it should be dismissed because the complaint does not allege a basis for municipal liability. (D.E. 13-2 at 6-10.) Because the Court has granted summary judgment to the individual defendants, and because the complaint does not allege that any other SCDC employee, not named a defendant, violated Plaintiff's rights, it necessarily follows that the complaint against Shelby County must also be dismissed.

Shelby County is correct that, even if it were proven that some SCDC employee violated Plaintiff's rights, it would not necessarily follow that Shelby County would be liable to Plaintiff. A local governmental entity "is not vicariously liable under § 1983 for the constitutional torts of its agents: It is only liable when it can be fairly said that the city itself is the wrongdoer." Collins v. City of Harker Heights, 503 U.S. 115, 121 (1992); see also Jett v. Dallas Indep. School Dist., 491 U.S. 701, 726-29 (1989) (discussing history of civil rights statutes and concluding that Congress plainly did not intend to impose vicarious liability on counties, municipalities or other local governmental bodies); City of Canton v. Harris, 489 U.S. 378, 388 (1989) (rejecting simple vicarious liability for municipalities under § 1983); City of St. Louis v. Praprotnik, 458 U.S. 112, 122 (1988) (interpreting

rejection of <u>respondeat</u> <u>superior</u> liability by <u>Monell v. Dep't of</u> <u>Soc. Servs.</u>, 436 U.S. 658, 691 (1978), as a command that "local governments . . . should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights"); <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 480-81 (1986) (same); <u>Stemler v. City of Florence</u>, 126 F.3d 856, 865 (6th Cir. 1997) (rejecting claims against city and county and holding that "in order to state a claim against a city or a county under § 1983, a plaintiff must show that his injury was caused by an unconstitutional 'policy' or 'custom' of the municipality"). To establish local governmental liability, a plaintiff must demonstrate

> (1) that the City pursued an official custom or policy of failing to adequately train, supervise, or discipline its officers in a particular matter, and (2) that such official policy or custom was adopted by the official makers of policy with "deliberate indifference" towards the constitutional rights of persons affected by the policy or custom.

<u>Haverstick v. Financial Fed. Credit, Inc.</u>, 32 F.3d 989, 996 n.8 (6th Cir. 1994) (citing <u>City of Canton</u>, 489 U.S. at 387-88). Thus, "'a plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy."'" <u>Searcy v. City of</u> <u>Dayton</u>, 38 F.3d 282, 287 (6th Cir. 1994) (citations omitted).

Although civil rights plaintiffs are not required to plead their theory of municipal liability with particularity,

<u>Leatherman v. Tarrant County Narcotics Intelligence & Coordination</u> <u>Unit</u>, 507 U.S. 163, 168-69 (1993), the complaint must be sufficient to put the municipality on notice of the plaintiff's theory of liability, <u>see, e.g.</u>, <u>Fowler v. Campbell</u>, Civil Action No. 3:06CV-P610-H, 2007 WL 1035007, at *2 (W.D. Ky. Mar. 30, 2007); <u>Yeackering</u> <u>v. Ankrom</u>, No. 4:05-CV-00018-M, 2005 WL 1877964, at *2 (W.D. Ky. Aug. 5, 2005); <u>Oliver v. City of Memphis</u>, No. 04-2074-B, 2004 WL 3316242, at *4 (W.D. Tenn. Dec. 2, 2004); <u>cf. Raub v. Correctional</u> <u>Med. Servs., Inc.</u>, No. 06-13942, 2008 WL 160611, at *2 (E.D. Mich. Jan. 15, 2008) (denying motion to dismiss where complaint contained conclusory allegations of a custom or practice); <u>Cleary v. County</u> <u>of Macomb</u>, No. 06-15505, 2007 WL 2669102, at *20 (E.D. Mich. Sept. 6, 2007) (same); <u>Morningstar v. City of Detroit</u>, No. 06-11073, 2007 WL 2669156, at *8 (E.D. Mich. Sept. 6, 2007) (same); <u>Chidester v.</u> <u>City of Memphis</u>, No. 02-2556 MA/A, 2006 WL 1421099, at *3 (W.D. Tenn. June 15, 2005).

The complaint in this case contains no allegations of municipal liability and, instead, apparently attempts to hold Shelby County liable on a theory of <u>respondeat</u> <u>superior</u>. Plaintiff has not responded to the motion to dismiss and, therefore, he has not attempted to correct this deficiency. The Court therefore GRANTS Shelby County's motion to dismiss the complaint.

As all claims against all parties have been dismissed, the complaint is DISMISSED WITH PREJUDICE. The Clerk is directed to

enter judgment for Defendants. All pending motions are DENIED as moot.

The Court must also consider whether Plaintiff should be allowed to appeal this decision in forma pauperis, should he seek to do so. The United States Court of Appeals requires that all district courts in the circuit determine, in all cases where the appellant seeks to proceed in forma pauperis, whether the appeal is frivolous. Floyd v. United States Postal Serv., 105 F.3d 274, 277 (6th Cir. 1997). Twenty-eight U.S.C. § 1915(a)(3) provides that "[a]n appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."

The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962). The test under 28 U.S.C. § 1915(a) for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any non-frivolous issue. Id. at 445-46. The same considerations that led the Court to grant Defendants' motion for summary judgment also compel the conclusion that an appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith. It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith.

The final matter to be addressed is the assessment of a filing fee if Plaintiff appeals the dismissal of this case. In McGore v. Wrigglesworth, 114 F.3d 601, 610-11 (6th Cir. 1997), the Sixth Circuit set out specific procedures for implementing the PLRA. Therefore, Plaintiff is instructed that, if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in McGore and 28 U.S.C. § 1915(b).

IT IS SO ORDERED this 22nd day of September, 2008.


**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE